## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| FROME WYE LIMITED, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | C.A. No. 22-mc-00249-CFC |
| HOSIE RICE LLP, SPENCER HOSIE, | ) | |
| AND DIANE RICE, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' REPLY BRIEF IN FURTHER SUPPORT THEIR
## <u>MOTION TO VACATE ARBITRATION AWARD</u>

OF COUNSEL:

Spencer Hosie
Diane Rice
Hosie Rice LLP
505 Sansome Street
Suite 1575
San Francisco, CA 94111

Dated: September 20, 2022

Jonathan A. Choa (#5319)
POTTER ANDERSON & CORROON LLP
Hercules Plaza
P.O. Box 951
Wilmington, Delaware 19899-0951
(302) 984-6000
jchoa@potteranderson.com

*Attorneys for Defendants*

## <u>TABLE OF CONTENTS</u>

<u>**Page**</u>

I.    INTRODUCTION ...........................................................................1

II.   THE PANEL IGNORED THE EXPLICIT LANGUAGE OF THE LFA: HOSIE AND RICE WERE CO-BORROWERS, *NOT* GUARANTORS ......2

III.  A DECISION ON DISPUTED FACTS WITH *NO* DISCOVERY NOR MERITS HEARING JETTISONS BASIC DUE PROCESS .........................4

      A.    The Framing Issue: Did Woodsford Have a Recovery Interest in the Firm's Non-Contingent Hourly Fee Income? .......................................4

      B.    The Record Below: A Threshold Legal Determination Designed to Shape Discovery Was Then Improperly Used to Deny Any Discovery and Deny the Firm a Substantive Merits Hearing................................8

      C.    The October 18, 2021 Decision Denying Leave to Amend.................9

IV.  CONCLUSION...........................................................................10

## <u>TABLE OF AUTHORITIES</u>

<u>**Cases**</u>                                                                                   <u>**Page**</u>

*Altemus v. U.S. Department of Veterans Affairs*,
    2022 WL 605723 (D. Del. Jan. 12, 2022) .................................................10

*Caputo v. Wells Fargo Advisors, LLC*,
    2022 WL 1449176 (3d Cir. May 7, 2022) .......................................................1

*Fanatics Retail Group (Dreams) LLC v. Robert Truax*,
    2020 WL 7042873 (D. Del. Dec. 1, 2020) .....................................................2

*Mansoory v. SC&A Construction, Inc.*,
    2009 WL 2140030 (Del. Ch. July 9, 2009) ....................................................3

*SPX Corp. v. Garda USA, Inc.*,
    94 A.3d 745 (Del. 2014) ..................................................................................3

## I.    __INTRODUCTION__.

Woodford's Opposition concedes that the FAA governs this issue, as indeed it does.  *See* D.I. 28, Woodsford Opp. at 1.  Woodsford also concedes that the "manifest disregard" standard to challenge an arbitration remains good law in Delaware.  *Id.* at 3 (*citing Caputo v. Wells Fargo Advisors, LLC*, 2022 WL 1449176 at *4 (3d Cir. May 7, 2022)).  No party quarrels with the "extremely deferential" review standard; that is a given.  Nor does the Firm seek to re-litigate the Panel's construction of the underlying contract: Arbitrators have the right to be wrong, even very wrong.

But Woodsford and the Firm do agree on **one** bedrock point: that vacatur is "warranted only where the arbitrator's refusal to hear proffered testimony so affects the rights of a party that it may be said that he was deprived of a fair hearing."  *Id.*  And this is **exactly** what happened here: a "threshold" decision on a question of contract meaning, a process agreed to sharpen discovery, suddenly became the basis for a final ruling on the **merits**.  This came on a pleading motion, where the Panel took as unprovable facts the law required they accept as true.  Instead, the Panel adopted Woodsford's version of these disputed facts.  And all of this happened with no discovery whatsoever.

No one cedes fundamental due process protections by agreeing to arbitrate.  And this Firm did not.

## II.     THE PANEL IGNORED THE EXPLICIT LANGUAGE OF THE LFA: HOSIE AND RICE WERE CO-BORROWERS, *NOT* GUARANTORS.

The LFA says that the partners, individual signatories, were **not** guarantors; stating that the partners had no "**suretyship**" defense.  ("Each Partner's obligations under this Section 13.3… are not subject to any… suretyship defense.").  *See* Petition for Confirmation of Arbitration Award ("Petition"), Ex. 1 (LFA § 13.3).

**A surety is a guarantor**: the terms are synonymous:

> A surety is an organization or person that assumes the responsibility of paying the debt in case **the debtor defaults or is unable to make payments**.  The party that guarantees the debt is referred to as the surety, or as the guarantor.

*See* Investopedia, Surety, Dec. 6, 2020.

More, the LFA says that the partners are "primarily liable," and that Woodsford could proceed against them first and immediately, which is what Woodsford did.  By definition, a guarantor can be held liable **only after** the principal obligor defaults.  *Fanatics Retail Group (Dreams) LLC v. Robert Truax*, 2020 WL 7042873, at *2 (D. Del. Dec. 1, 2020) ("Under Delaware law, a contract of guaranty is a promise to answer for the payment of some debt or for performance of some obligation by another on the default of that third person who is liable in the first instance.") (citations omitted).

Woodsford debates none of these points.  Its brief is utterly silent on what the LFA says, and how—possibly—under the plain language, the partners could be

considered guarantors.  They were **not** guarantors.  They were co-borrowers, as Woodsford's own conduct confirms.  As such, the individual partners are entitled to the protection of the Delaware usury law.  That is simply what the law requires.

An arbitrator is not free to disregard the plain terms, and so rewrite an agreement.  Woodsford says that *Mansoory v. SC&A Construction, Inc.*, 2009 WL 2140030 (Del. Ch. July 9, 2009) case is to the contrary.  It is not.  The Court held that "Mansoory has failed to provide strong and convincing evidence that the Arbitrator **contradicted the parties' agreement** or otherwise exceeded his authority."  *Id.* at *4.  Here, the Panel ignored the express terms of the LFA.

Woodsford never explains how the partners could be "guarantors," if explicitly not sureties, and primarily liable.  Why this sudden delicacy?

This point alone supports vacatur under FAA § 10(a)(4).  In *SPX Corp. v. Garda USA, Inc.*, 94 A.3d 745, 751 (Del. 2014), the Delaware Supreme Court found the arbitrators interpretation "may have been wrong, but it was not without **a basis in the contract** and the parties' submissions."  There is no such saving grace here.  Rewriting a contract is, perforce, a manifest disregard of the law.

III.    **A DECISION ON DISPUTED FACTS WITH *NO* DISCOVERY NOR MERITS HEARING JETTISONS BASIC DUE PROCESS.**

   A.    **The Framing Issue: Did Woodsford Have a Recovery Interest in the Firm's Non-Contingent Hourly Fee Income?**

Over many months, the Firm and Woodsford carefully negotiated a high-risk, high-reward Litigation Financing Agreement.  Woodsford's website emphasized that it provides, high risk, no recourse litigation financing where Woodsford will not get paid absent a contingency fee recovery.  This is explicit in Woodsford's July 30, 2021 website.  *See* Declaration of Spencer Hosie in Support of Defendants' Reply Brief ("Second Hosie Decl."). at ¶ 2.  (Curiously, Woodsford has since dropped some of this language on its current website).  Woodsford's July 30, 2021 website also describes its Term Sheets as important documents designed to capture precisely the economics of a negotiated agreement.  *See* Second Hosie Decl. at ¶ 3.  ("A Practical Guide to Litigation Funding" taken from www.woodsford.litigationfunding.com/us).

Woodsford's Term Sheet said that the parties had negotiated a contingency fee financing vehicle.  For example, the Term Sheet says that, for the hybrid cases, Woodsford's repayment claim lay in any "**Contingent Fee Income**" received in "hybrid" cases.  *See* D.I. 25-1 at 3-4.  Woodsford had no interest in the hourly fees in the hybrid cases.

After learning that the Firm had recovered just (a portion) of its hourly fees, Woodsford suddenly argued that several sentences in definitional paragraphs in the LFA changed everything about the deal: Woodsford wanted the bird-in-hand, and so claimed an interest in the Firm's hourly fees, which were not contingent at all.

The LFA begins with a basic definitional "Whereas" clause:

> WHEREAS, [Hosie Rice] is seeking funding to pay a portion of [Hosie Rice]'s monthly operating expenses, including out-of-pocket costs and expenses which [Hosie Rice] has agreed or will agree to advance to enable [Hosie Rice]'s clients (the "Claimholders" in the Contingency Cases (defined below) to pursue the causes of action (individually, a "Claim" and collectively, the "Claims") set forth in the pleadings filed against the opposing parties named therein (individually or collectively, the "Defendants")

D.I. 14. Petition, Ex. 1 at 1. This deal was structured to fund, in part, contingency cases, including the contingent portions of hybrid cases. The Firm's **clients** were the "Claimholders;" the "**Claims**" were cases brought against third-party defendants.

The LFA then, several paragraphs later, defines Gross Revenue:

> any *recovery, payment, gross revenue, and/or other proceeds (including any non-monetary consideration)* paid to [Hosie Rice] for its own account by <u>Claimholders, Defendants or any third party pursuant to or in connection with any of the Contingency Cases or any Revenue Event,</u> including, (i) *all amounts paid in cash or in kind to [Hosie Rice] upon settlement or judgment of any Claim and (ii) any and all other consideration transferred to [Hosie Rice] in connection*

5

> *with the resolution of any Claim.*  For avoidance of
> doubt, if the scope of proceeds from a Revenue Event
> includes, or is supplemented by proceeds paid to Firm for
> its own account for rights, claims, or causes of action in
> addition to the Claims, there shall be no apportionment,
> allocation or offsetting on account of any such right,
> claim or cause of action for purposes of determining the
> Gross Revenue paid to [Hosie Rice] pursuant to such
> Revenue Event or supplement thereof; rather, 100% of
> the recovery, payment, gross revenue, and/or other
> proceeds (including any non-monetary consideration)
> paid to [Hosie Rice] pursuant to such Revenue Event or
> supplement thereto shall constitute "Gross Revenue"
> hereunder.

*Id.* at 3.  As Woodsford itself briefed, this language is designed to ensure that

Woodsford got its piece of any contingent fee recovery, no matter whether

received in kind, or howsoever structured by the defendant.  *See* Second Hosie

Decl., Ex. 13 at 6.  It was not designed to give Woodsford a new claim to **non-**

**contingent hourly fees** in the hybrid cases.

Given the negotiations between the parties, as documented in

contemporaneous notes, the very economic structure of the deal (26% plus the first

$250,000 out), and as verified by Woodsford's Term Sheet, there was nothing in

this Gross Revenue definitional language that fairly told the Firm that Woodsford

had in the 11th hour covertly changed the deal in the most profound way possible.

If Woodsford **then**, post-Term Sheet, intended to lay a claim to the hourly fee

portions of the contingency cases, it should have so stated.  It should have

**disclosed** this abrupt about-face.  But, Woodsford never said anything along these lines then.

This tension—between what Woodsford told the Firm and documented in its Term Sheet—and its new cut-for-litigation position that it had an interest in the hourly fees in the hybrid cases, was apparent from the Firm's first filing forward. As stated in ¶ 29 of the Firm's Complaint in Arbitration for Emergency Relief, D.I. 25-1 at 24, if this is what Woodsford really had intended and done, then it flat-out misled the Firm and its partners in the negotiations and through its own Term Sheet.  If, however, the Panel agreed that the contract, like its predecessor Term Sheet, did **not** give Woodsford an interest in the long disclaimed hourly fees, then discovery into fraud in the inducement, usury, unconscionability, and other issues would **not** be necessary.

As set forth below, the record is clear that the parties and the Panel agreed that it would be sensible to decide this threshold and gating contractual issue before launching parallel discovery: why have proliferating discovery proceeding when a threshold issue of contractual interpretation would make one course of discovery relevant and the other not?  Sometimes it is better—when at a fork in the road—**not** to take it.

**B.**     **The Record Below: A Threshold Legal Determination Designed to Shape Discovery Was Then Improperly Used to Deny Any Discovery and Deny the Firm a Substantive Merits Hearing.**

In the first scheduling conference, the Firm proposed an early ruling on the basic contract question: did Woodsford have a claim to hourly fees in the hybrid cases?  *See* January 4, 2021 Hosie letter to Panel (resolving contract "early would significantly streamline this dispute"), D.I. 25-1 at 39.  Woodsford's crossing letter agreed, noting that resolving the contract issues first "will reduce the issues the Panel needs to resolve at any final hearing."  *See* Second Hosie Decl., Ex. 14. (Woodsford filed an Amended Answer and Counterclaims in late December 2021, with the Firm's consent, bringing numerous claims against the Firm, all of which it carefully preserved as the contract issues moved forward).

The entire point of the proposed early decision as shaping discovery was explicit:

> Finally, both parties agree that discovery should begin only **after** the parties file and this Panel decides the Summary Judgment questions outlined above.  It is difficult to police fact discovery until one knows what basic issues remain in dispute.  Streamlining discovery is one important reason why **both** parties have proposed early motions on key contractual meaning issues.

Spencer Hosie letter to Arbitration Panel, January 7, 2021, D.I. 25-1 at 43-44.

On January 16, 2021, the Panel denied the parties' leave to file early briefing on the threshold contractual questions:

8

> [T]he Panel has decided that the filing of summary
> disposition motions at this time will not serve the stated
> goals of efficiency and cost effectiveness in fully
> resolving the claims and counterclaims in this arbitration,
> and, therefore, the requests to file such motions are
> denied…. At the close of this discovery, the Panel will
> revisit whether summary dismissal motions should be
> entertained.

Pre-Hearing Order No. 2, D.I. 31-12.

Several days after this Order, the Panel set a scheduling call for February 4, 2021, and ordered the parties to "confer to try to agree on dates for exchange of documents, depositions, discovery cutoff, the hearing and submission of pre-hearing materials called for by JAMS Rule 20…." *See* email from Arbitrator Kramer to all parties, Second Hosie Dec., Ex. 15.

The Panel then issued Pre-Hearing Order No. 3 on February 16, 2021. Here, the Panel reversed course, and asked that the parties file briefing on the threshold contract questions. The Order stated that "[a]ll discovery is stayed pending further order of this Panel." D.I. 31-13. This was the Firm's proposal to streamline discovery and narrow the issues.

## C.   <u>The October 18, 2021 Decision Denying Leave to Amend.</u>

The Panel rejected facts the Firm plausibly pled, and found "futility" by adopting Woodsford's contrary (but merely asserted, not proven) facts. *See* D.I. 24 at 16-17.

This was quintessential error.  Merits disputes may **not** be decided on pleading motions with warring facts.  This is a basic principle of law.  The Court must accept the non-moving party's well-pled factual allegations as true.  "[T]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."  *Altemus v. U.S. Department of Veterans Affairs*, 2022 WL 605723, at *1 (D. Del. Jan. 12, 2022).  The Panel ignored a clear rule of law, as the Firm made explicit in its February 2022 hearing.

## IV.   <u>CONCLUSION</u>.

An arbitrator does not have the power to decide capriciously that a pleading may not be amended, particularly prior to any discovery, a pretrial schedule, or a set trial date.  D.I. 25-1, pp. 54-58.  This is particularly true when early resolution of a gating issue would thereafter shape and focus discovery to the benefit of the parties.  The very purpose of the process here, as set forth above, was to streamline the discovery by addressing a threshold contractual question first.  Given this agreed upon procedure, the Panel's subsequent decision to deny the Firm leave to amend is dead contrary to the process that all had previously endorsed.  The Firm was, in short, denied a fair merits hearing; indeed, any evidentiary merits hearing whatsoever.

At the February 2022 hearing, one of the arbitrators bluntly asserted that the Panel had discretion to do whatever it wanted in denying an amendment.  But that

is not quite right: if the denial effectively deprived a party of due process in a merits hearing, then arbitral discretion must cede to due process.  Tr. at 15:22-16:18, D.I. 25-1 at 95.

Finally, the Panel suggests that killing the case now is only fair given that it has run on for far too long.  This arbitration has been pending for less than18 months.  During that time, the parties spent about ten months waiting for the Panel to issue decisions.  This is not to say that any party was dilatory.  But it is said to make plain that the Firm most certainly was not dilatory.  Fundamentally, the Firm was punished here for trying to be efficient.  That is most unjust.


OF COUNSEL:

Spencer Hosie
Diane Rice
Hosie Rice LLP
505 Sansome Street
Suite 1575
San Francisco, CA 94111


Dated: September 20, 2022

POTTER ANDERSON & CORROON LLP

By: */s/ Jonathan A. Choa*
    Jonathan A. Choa (#5319)
    Hercules Plaza
    P.O. Box 951
    Wilmington, Delaware 19899-0951
    (302) 984-6000
    jchoa@potteranderson.com

*Attorneys for Defendants*

11

## <u>CERTIFICATE REGARDING WORD COUNT</u>

Pursuant to the Court's *Standing Order Regarding Briefing In All Cases,*
undersigned counsel certifies that the text of Defendants' Reply Brief is in Times
New Roman 14-point font and combined contain 2,435 words as counted
Microsoft Word for Office 365 ProPlus.


<u>/s/ Jonathan A. Choa</u>