# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| FROME WYE LIMITED, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) C.A. No. 22-mc-00249-CFC-SRF |
| HOSIE RICE LLP, SPENCER HOSIE, | ) |
| AND DIANE RICE, | ) |
| | ) |
| Defendants. | ) |

## RESPONDENTS' FED. R. CIV. P. 72(b)(2) OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION REGARDING RESPONDENTS' MOTION TO VACATE AND <u>PETITIONER'S MOTION TO CONFIRM</u>

OF COUNSEL:

Spencer Hosie
Diane Rice
Hosie Rice LLP
505 Sansome Street
Suite 1575
San Francisco, CA 94111

Dated: December 30, 2022

Jonathan A. Choa (#5319)
POTTER ANDERSON & CORROON LLP
Hercules Plaza
P.O. Box 951
Wilmington, Delaware 19899-0951
(302) 984-6000
jchoa@potteranderson.com

*Attorneys for Defendants*

## **TABLE OF CONTENTS**

**Page**

I. BACKGROUND ...............................................................................................1

II. LEGAL STANDARD OF REVIEW...............................................................4

III. THE USURY ISSUE: HOSIE AND RICE WERE "PRIMARILY LIABLE" CO-BORROWERS, NOT GUARANTORS......................................................4

IV. DUE PROCESS REQUIRED FAR MORE .....................................................8

V. CONCLUSION...............................................................................................10

# **TABLE OF AUTHORITIES**

**Cases**                                                                                                                   **Page**

*City Investing Co. Liquidating Tr. v. Cont'l Cas. Co.*,
    624 A.2d 1191 (Del. 1993)..................................................................................5

*CPR Management, S.A. v. Devon Park Bioventures, L.P.*,
    19 F.4th 236 (3d Cir. 2021) ...............................................................................10

*Fanatics Retail (Dreams) LLC v. Robert Truax*,
    No. 20-0794 (MN), 2020 WL 7042873 (D. Del. Dec. 1, 2020).......................7

*Fletcher v. Feutz*,
    246 A.3d 540 (Del. 2021)...................................................................................4

*Golovan v. University of Delaware*,
    73 F.Supp.3d 442 (2014) ...................................................................................4

*Lorillard Tobacco v. American Legacy*,
    903 A.2d 728 (Del. 2006)...................................................................................4

*Norton U.K.-Sen Transp. Partners L.P.*,
    67 A.3d 354 (Del. 2013).....................................................................................4

*SV Inv. Partners, LLC v. ThoughtWorks, Inc.*,
    7 A.3d 973 (Del. Ch. 2010) ...............................................................................4

*United States v. Sanofi-Aventes U.S. LLC*,
    226 A.3d 1117 (Del. 2020)................................................................................4

**Statutes**

6 Del. Code § 2301 ......................................................................................................8
6 Del. Code § 2301(c)..................................................................................................2
Fed. R. Civ. P. 72(b)(3)...............................................................................................4

I. **BACKGROUND.**

In 2018, the Hosie Rice LLP firm (the "Firm") and its two Partners, Diane Rice and Spencer Hosie, entered into a Law Firm Funding Agreement ("LFFA") with Frome Wye Limited (dba "Woodsford"). (D.I. 8, Ex. 1) Woodsford provides high-risk, high return non-recourse litigation financing, as its own Term Sheet stated in this very case (D.I. 25-1, Ex. 5). Woodsford negotiated to take an interest in the Firm's contingency recoveries, if any. *Id.*

The Firm's typical Representation Agreement is a "hybrid" agreement, where the Firm receives a reduced hourly fee amount paid monthly "regardless of outcome," and an additional contingency interest paid out of any case recovery. The LFFA provided Woodsford with a very high rate of return (26% per annum), plus a mandatory "first" money out interest prepayment of $250,000. LFFA § 17.3.3(c), § 1.15 (D.I. 8, Ex. 1). (The Firm made this interest prepayment within mere weeks of signing the Woodsford LFFA).

In 2019, the Firm settled a case with Google. The Firm had a hybrid agreement with its client where the Firm received reduced hourly fees and costs "due regardless of outcome," with an additive contingency interest, in the event of a recovery.

After the settlement, the client fired the Firm, refused to pay a dime, and then sued the Firm for malpractice within days of the Firm filing an arbitration to

1

recover the fees and costs due.

This fee arbitration was, in a word, bitter. The arbitrator ultimately awarded the Firm $4 million in long outstanding amounts that were due regardless of outcome hourly fees and costs. (The client was often months to years in arrears on monthly bills). The Firm did not recover any contingency fees in this case; this is undisputed.

Woodsford then made a claim to the Firm's hourly fees. Woodsford initiated its dispute with the Firm by filing a secret foreclosure action to try to seize the Partners' family home in California.

The Woodsford arbitration turned on three principal issues: (1) whether the LFFA indeed gave Woodsford an interest in non-contingent hourly fees paid monthly, as opposed to contingent recoveries; (2) whether the two Firm Partners, Hosie and Rice, were entitled to the benefits of the Delaware usury statute,[1] which protects "any borrower," regardless of the amount of the debt, where the obligation is secured by the "any borrower's" personal residence (as was true here); and, (3) whether the Firm was deprived of fundamental due process by being denied any discovery or a substantive merits hearing, given an agreement between the parties

---

[1] "Notwithstanding any other provision in this chapter to the contrary, there shall be no limitation on the rate of interest which may be legally charged for the loan or use of money, where the amount of money loaned or used exceeds $100,000, and where repayment thereof is not secured by a mortgage against the principal residence of **any borrower**." 6 Del. Code § 2301(c) (emphasis added).

2

that the contractual claim to hourly fees issue should be decided first as a gating item to thereafter narrow and focus discovery.

The Arbitration Panel construed the Woodsford LFFA as giving Woodsford a fee interest in the guaranteed monthly hourly fees and costs (D.I. 8, Ex. 2). That was never the deal, but that is not an issue that can be relitigated now: arbitrators have the right to be wrong, even egregiously wrong. The Final Award directed Respondents to pay $800,000 plus interest of $1,267,200 (as of May 17, 2022) less credit of an interest prepayment of $250,200, for a total of $1,817,000. (D.I. 8, Ex. 4 at 60).

On October 12, 2022, this Court referred the parties' competing motions to vacate and confirm the arbitral award to the Magistrate Judge Fallon. The parties' briefing[2] before Magistrate Fallon focused on just two issues: (1) were the Partners "co-borrowers," and so entitled to the protections of Delaware usury law, or mere "guarantors," thereby not being afforded those protections; and, (2) whether, as this case unfolded procedurally, the Arbitration Panel deprived the Firm of due process by denying it any discovery or a merits hearing, and instead deciding hotly disputed factual issues on a pleading motion. Magistrate Judge Fallon filed a

---

[2] Respondents' briefing for the Motion to Vacate is as follows: Respondents' Opening Brief in Support thereof (D.I. 24) and Respondents' Reply (D.I. 33). For briefing on the Motion to Confirm, Respondents filed an Answering Brief in Opposition (D.I. 36).

3

Report and Recommendation ("R&R") on December 16, 2022.

## II. LEGAL STANDARD OF REVIEW.

In reviewing the R&R, this Court "must determine *de novo* any part of the Magistrate Judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3).

## III. THE USURY ISSUE: HOSIE AND RICE WERE "PRIMARILY LIABLE" CO-BORROWERS, NOT GUARANTORS.

The law in Delaware is clear: an arbitrator must accept a contract as written, and lacks the authority to rewrite the parties' agreement. *See, e.g., Fletcher v. Feutz,* 246 A.3d 540, 555 (Del. 2021). "A court must accept and apply the plain meaning of an unambiguous term…." *Lorillard Tobacco v. American Legacy*, 903 A.2d 728, 743 (Del. 2006). Delaware law gives contracts' "words their plain meaning." *United States v. Sanofi-Aventes U.S. LLC*, 226 A.3d 1117, 1129 (Del. 2020) (quoting *Norton U.K.-Sen Transp. Partners L.P.*, 67 A.3d 354, 360 (Del. 2013).

Under Delaware law, "[c]ontracts are to be interpreted as written, and effect must be given to their clear and unambiguous terms." *Golovan v. University of Delaware*, 73 F.Supp.3d 442, 450 (2014) (citing *SV Inv. Partners, LLC v. ThoughtWorks, Inc.*, 7 A.3d 973 (Del. Ch. 2010)). "When a contract is clear on its face, the court should rely solely on the clear, literal meaning of the words contained in the contract." *Id.* "If a writing is plain and clear on its face, *i.e.*, its

4

language conveys an unmistakable meaning, the **writing** itself is the **sole source** for gaining an understanding of intent." *City Investing Co. Liquidating Tr. v. Cont'l Cas. Co.,* 624 A.2d 1191, 1198 (Del. 1993) (emphasis added).

In its October 18, 2021 decision denying the Firm leave to amend, the Panel dismissed the Partners' usury claim. In one paragraph that cited nothing in the LFFA, the Panel concluded that the Partners were not borrowers, but rather "guarantors" under the LFFA. (*See* D.I. 8, Ex. 3). As "guarantors," the Panel said that the Partners could not claim the protections of the Delaware usury statute.

In its final May 17, 2022 award, the Panel again cursorily dismissed the usury point, saying that the Partners were guarantors of "payment," but cited no case law on the distinctions between and amongst guarantors of different types. (D.I. 8, Ex. 4 at 59). The Panel also cited to ¶ 4 of the LFFA, which it said made clear that the Firm received the money and perforce was the sole "borrower." (Not so; under the LFFA, the two Partners were entitled to spend up to $150,000 a month on operational costs, including "salaries"; *see* below). LFFA § 4.2(D) (D.I. 8, Ex. 1). The Panel then cited Section 13 to conclude that the Partners were only guarantors of "payment," a conclusion directly contrary to the Section 13.3 language that "… Partners shall be jointly and severally liable between and among themselves and with the Firm for the payment **and performance of all obligations and liabilities of Firm**…." (Emphasis added).

5

Further, the Panel's reliance on Sections 4 and 13 headings to determine that the Firm was the sole borrower is specifically disallowed by the LFFA terms. Section 2.1 defines the Rules of Construction as follows: "The headings of the Sections of this Agreement are inserted for convenience only and shall not constitute a part or affect in any way the meaning or interpretation of this Agreement."

**Usury Objection:** Woodsford's briefing as reflected in the Panel's decision on usury lead Judge Fallon into error. She incorrectly accepted the Panel's October 18, 2021 conclusory aside that the two Partners were the "guarantors" of the debt, and so were not entitled to the protections of Delaware law. R&R at 11-12 (citing D.I. 8, Ex. 3 at 54). (The Panel reached a slightly different conclusion in its final May 17, 2022 opinion, finding that the Partners were not general "guarantors," but instead "guarantors of payment."). (D.I. 8, Ex. 4 at 59).

The decision to cast the Partners as guarantors and deny them the benefit of the usury statute directly contradicted the LFFA terms. The two Panel opinions assumed their premise that the Partners were guarantors, and cited essentially no law on this point other than copying irrelevant cases from the Petitioner's brief. The Panel rewrote the plain meaning of the LFFA. And it did so with nearly no citations to the profuse LFFA provision on point.

This was, perhaps, a reason for this: the plain text of the LFFA says—

6

repeatedly—that the Partners were not guarantors of any stripe or variant, but expressly co-borrowers and not guarantors. Following are just some of the relevant quotes from the contract the parties signed:

1. The Partners had no "suretyship" defense under the LFFA. A surety is a guarantor. The LFFA so explicitly disclaims a guarantor relationship. LFFA § 13.3. (D.I. 8, Ex. 1). ("Each Partner's obligations under this Section 13.3… are not subject to any… **suretyship defense**."). *Id.* (emphasis added).

2. The Partners were **"jointly and severally liable… for the payment and performance of all obligations…"** under the LFFA. *Id.* (emphasis added). Being responsible for performance obligation is not a payment guarantor.

3. The Partners were jointly and severally liable for any breach, as well as "jointly and severally liable between and among themselves and the Firm for the payment and **performance of all obligations and liabilities**" under the LFFA. *Id.* (emphasis added).

4. "Each Partner's **obligations** under this Section 13.3 are primary, continuing, absolute and conditional…." *Id.* The Partners were **"primarily liable"** under the LFFA. *Id.* (emphasis added).

5. "Partners agree that any obligation of Firm… may be enforced by Funder against a Partner or Partners **without any requirement that Funder first exercise its rights against Firm.**" *Id.* (emphasis added). By definition, a guarantor can be held liable only after the principal obligor defaults. *Fanatics Retail (Dreams) LLC v. Robert Truax*, No. 20-0794 (MN), 2020 WL 7042873, at *2 (D. Del. December 1, 2020). "Under Delaware law, a contract of guaranty is the promise to answer for the payment of some debt or for the performance of some obligation by another on the default of that third person who is liable in the first instance" (citations omitted). *Id.*

The Panel's ultimate conclusion that the Partners were only "payment guarantors" repeated in the R&R wars with the plain language of the LFFA and

7

contradicts the contract directly. This conclusion does not "draw its essence" from the contract, and is not "rationally derived" from the LFFA.[3]

Judge Fallon's R&R found that the Firm was the "principal borrower," and hence Hosie and Rice became merely guarantors. R&R at 11. But Section 2301 says that "any borrower" is entitled to the statutory protection, not just "principal borrowers," *i.e.*, "… where repayment thereof is not secured by a mortgage against the principal residence of any borrower." More, under the LFFA, § 4.2(D) (D.I. 8, Ex. 1), the Partners were entitled to take up to $150,000 a month for costs, including salaries. Concluding that the Partners were not borrowers because they did not get the benefit of the sums borrowed contradicts directly with the language of the LFFA. *Id.*

This LFFA could not be more clear: the Partners were primarily liable co-borrowers, and not mere guarantors. As such, they were entitled to the protection of Delaware usury law.

## IV.   DUE PROCESS REQUIRED FAR MORE.

At the outset of the case, the Firm proposed that the Panel first decide the

---

[3] Additionally, Petitioner's judicial admissions and allegations against the Partners are directly contrary to Woodsford's position. (D.I. 31, Ex. 11; Ex. 28). For example, Petitioner alleges specific Partner breaches of obligations and performances in the June 23, 2020 Termination Letter *e.g.*, Partners failed to provide information on at least a quarterly basis; failed to provide balance sheets; failed to provide updated information on the value of the Partner Collateral. *Id.*

8

contractual gating issue: whether the LFFA gave Woodsford a claim to non-contingent hourly fees. An early decision on this issue would thereafter narrow and shape discovery. While the Panel initially rejected this approach, it changed its mind and set early motion practice on this gating issue. Woodsford, too, initially objected, but then changed its mind, although being very careful to note that it fully intended to proceed with discovery if the contract issue went against Woodsford. (*See* D.I. 34-1, Ex. 14).

As discussed in the detailed Motions to Vacate and to Confirm, the Panel decided that Woodsford had a claim to the non-contingent hourly fees. (D.I. 8, Ex. 2 at 46). The Firm then promptly filed a motion for leave to amend its operative complaint to reflect this new scope of discovery, long understood to be the point of deciding the contract issue first.

The Panel denied the Firm leave to amend. In two decisions, it found against the Firm on facts well pled, facts that Delaware law required the Panel to accept as true. (D.I. 8, Ex. 3; D.I. 8, Ex. 4). In this fashion, an early motion, designed to tailor and narrow discovery, became a fact-based case terminal motion.
**Objection:** On this record, Woodsford led Judge Fallon into error. *See* R&R at 10-11. It is improper to decide carefully pled factual issues in a pleading motion. Moreover, the facts set forth in the proposed Amended Complaint were detailed, and persuasive on their face. Fundamentally, the Firm and the Partners were

punished here, by being denied any discovery or a merits hearing based on a shared agreement to narrow and tailor discovery with an early ruling on a gating contract issue. "A 'fair hearing' is one where the parties have notice and opportunity to present evidence and argument before an impartial arbitrator." *CPR Management, S.A. v. Devon Park Bioventures, L.P.*, 19 F.4th 236, 245 (3d Cir. 2021) (citations omitted). There was never an agreement that the Panel's decision on this threshold issue would end the case, as Woodsford itself made clear.

## V. CONCLUSION.

For the foregoing reasons, the Court should sustain Respondents' objections, decline to adopt Magistrate Judge's R&R, and instead grant Respondent's Motion to Vacate and Deny Petitioner's Motion to Confirm.

|  |  |
|---|---|
| OF COUNSEL: | POTTER ANDERSON & CORROON LLP |
| Spencer Hosie<br>Diane Rice<br>Hosie Rice LLP<br>505 Sansome Street<br>Suite 1575<br>San Francisco, CA 94111 | By: */s/ Jonathan A. Choa*<br>Jonathan A. Choa (#5319)<br>Hercules Plaza<br>P.O. Box 951<br>Wilmington, Delaware 19899-0951<br>(302) 984-6000<br>jchoa@potteranderson.com |
| Dated: December 30, 2022 | *Attorneys for Defendants* |

**Certificate of Font-Type Size and Word Count Compliance**

I hereby certify that the forgoing brief complies with the Honorable Chief Judge Colm F. Connolly's *Standing Order Regarding Briefing In All Cases*, in that it has been prepared with Times New Roman font, 14 point, and contains 2,402 words according as counted Microsoft Word for Office 365 ProPlus.

Dated: December 30, 2022         */s/ Jonathan A. Choa*
                                 Jonathan A. Choa